IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3052-D

| | | |
|---|---|---|
| JERRY WAYNE ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SUPERINTENDENT HAYNES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On April 13, 2010, Jerry Wayne Adams ("Adams" or "plaintiff"), a state inmate proceeding pro se, filed a complaint under 42 U.S.C. § 1983 [D.E. 1]. On January 26, 2011, the court reviewed Adams's original and amended complaints pursuant to 28 U.S.C. § 1915A and allowed him to proceed with his claim for deliberate indifference to a serious medical need against defendants Harrell,[1] Crenshaw, and Jackson [D.E. 11], and the clerk directed North Carolina Prisoner Legal Services, Inc., ("NCPLS") to investigate Adams's claims [D.E. 12]. On April 26, 2011, NCPLS responded to the order of investigation, indicating that it had determined appointment of counsel was not warranted and had provided advice and assistance to Adams [D.E. 19].

On March 14, 2011, Magistrate Judge William A. Webb directed the United States Marshal Service ("USMS") to effect service on Adams's behalf [D.E. 16]. On March 28, 2011, the USMS filed a return of service as to Crenshaw and Harrell, indicating that it was unable to serve these

---

[1] In his complaint, Adams spelled this defendant's last name as "Harrells." Compl. [D.E. 1] 2. The correct spelling of this defendant's last name is "Harrell." Def. Harrell's Answer [D.E. 42] 1.

defendants at the addresses that Adams provided [D.E. 17].[2] On August 1, 2011, the court directed the North Carolina Attorney General to provide addresses for service on Crenshaw and Harrell [D.E. 21]. On August 12, 2011, the Attorney General filed a response with addresses for service [D.E. 22]. On August 25, 2011, the clerk reissued summonses as to Crenshaw and Harrell [D.E. 23], and on September 15, 2011, the USMS filed a return of service on both defendants [D.E. 24].

On October 31, 2011, Crenshaw answered the complaint [D.E. 32] and filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.E. 33]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Adams about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 35]. On November 2, 2011, Crenshaw filed an amended answer [D.E. 36], and a second motion to dismiss pursuant to Rule 12(b)(6) [D.E. 37].[3] Pursuant to Roseboro, the court notified Adams about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 39]. On November 16, 2011, Adams responded in opposition to Crenshaw's motions [D.E. 44], and filed an affidavit [D.E. 45] and a motion for appointment of counsel [D.E. 46]. On November 21, 2011, Crenshaw replied [D.E. 47].

On November 17, 2011, having obtained two extensions of time [D.E. 25, 29–31], Harrell answered the complaint [D.E. 42] and filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(5) and (6) [D.E. 40]. Pursuant to Roseboro, the court notified Adams about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 43]. On December 7, 2011, Adams responded in opposition and renewed his motion for appointment of

---

[2] On April 20, 2011, the USMS filed a return of service on Jackson [D.E. 18], and on May 18, 2011, she answered the complaint [D.E. 20].

[3] In light of Crenshaw's second motion to dismiss, the court denies her first motion to dismiss as moot.

2

counsel [D.E. 48–49]. On April 5, 2012, Adams filed a "motion on dispositive issues" [D.E. 55].

On April 23, 2012, Jackson filed a motion for summary judgment [D.E. 56] and a supporting memorandum [D.E. 57]. Pursuant to Roseboro, the court notified Adams about the summary judgment motion, the consequences of failing to respond, and the response deadline [D.E. 58]. On May 8, 2012, Adams responded in opposition to Jackson's motion [D.E. 59].

As explained below, the court grants Harrell's motion to dismiss, denies Crenshaw's motions to dismiss and Adams's motion for appointment of counsel, and grants in part Adams's "motion on dispositive issues." Jackson's motion for summary judgment remains pending.

I.

Adams is incarcerated at Pender Correctional Institution. See N.C. Dep't of Pub. Safety, Offender Pub. Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0001209 (last visited June 20, 2012).[4] The allegations in Adams's complaint arise from his incarceration at Warren Correctional Institution ("WCI"). Compl. 1. Adams alleges that he suffers from a medical condition called "neurothapy" which requires treatment. Id. 4. Adams states that while he was incarcerated at WCI, Harrell, his treating physician at WCI, developed a "conflict . . . which derived from accusations made by nurses Hanks and Crenshaw" that Adams was misusing the prescription drug Neurontin. Id. Apparently, the conflict began when another inmate, attempting to obtain pain medication, "told medical nurses that 'he knew the medication would work for him because he tried Jerry Adams['s] meds.'" Pl.'s Aff. [D.E. 45] ¶ 8. On June 2, 2008, Crenshaw counted Adams's medication, and determined that eighteen pills were missing. Id. ¶¶ 1–2. Adams suggests that Crenshaw miscounted the pills, and alleges that Crenshaw refused his suggestion that

---

[4] Adams has failed to inform the court of his change of address, as required by the local rules. See Local Civil Rule 83.3, EDNC. The court cautions Adams to comply with the local rules of this court.

3

she recount them. Id. ¶ 4. Moreover, Adams asserts that Crenshaw knew that she had made an untrue statement which "would cause [Adams] pain, suffering, and irreparable harm." Id. ¶ 2.

Although the accusations did not result in disciplinary action against Adams, Adams alleges that the accusations caused Harrell to "form[] prejudicial opinions about [Adams], discontinu[e] all treatment, and . . . refus[e] to treat [Adams] or to consider any alternative treatment, therapy or [medications]," and caused Jackson to "refuse to allow [Adams] to see the other unit doctor." Compl. 4. As a result, Adams suffered "constant pain, discomfort, and mental anguish" and is "losing use of [his] right hand." Id.; see also Pl.'s Aff. ¶ 5.

A.

Initially, the court addresses Harrell's argument that Adams failed to effect proper service of the complaint and summons upon him. In support of his motion, Harrell filed his own affidavit, as well as the affidavits of Thomas E. Jones, a paralegal with the North Carolina Department of Justice, and Felix Desantis, the Director of the Division of Prisons ("DOP") Mail Service Center. See Def. Harrell's Mot. Dismiss [D.E. 40], Exs. 1–3.

Proper service of process (or waiver of service under Rule 4(d)) is necessary for the court to exercise personal jurisdiction over a defendant. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). Under Rule 4(m), if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court must dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time, unless the plaintiff can show good cause. Fed. R. Civ. P. 4(m). Rule 4(e)(1) permits a plaintiff to serve individual defendants "pursuant to the law of the state in which the district court is located." Fed. R. Civ. P. 4(e)(1).

4

The North Carolina Rules of Civil Procedure permit service "[b]y mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c). Under Rule 4(j)(1)(c), a plaintiff may mail the documents to a defendant's place of employment. See id.; Moore v. Cox, 341 F. Supp. 2d 570, 573 (M.D.N.C. 2004); Waller v. Butkovich, 584 F. Supp. 909, 926 (M.D.N.C. 1984). When a defendant challenges whether a plaintiff effected valid service by certified mail, a plaintiff may prove valid service by filing an affidavit (1) averring that a copy of the summons and complaint was sent by registered or certified mail, return receipt requested, and that addressee received the copy and (2) attaching the return receipt (or other satisfactory evidence of delivery). See N.C. Gen. Stat. § 1-75.10(a)(4); Granville Med. Ctr. v. Tipton, 160 N.C. App. 484, 490, 586 S.E.2d 791, 796 (2003); see also N.C. Gen. Stat. § 1A-1, Rule 4(j2)(2). Under North Carolina law, showing "merely that the registered or certified mail [was] delivered to the address of the party to be served and that a person of reasonable age and discretion receive[d] the mail and sign[ed] the return receipt on behalf of the addressee . . . . raises a rebuttable presumption of valid service." Lewis Clarke Assocs. v. Tobler, 32 N.C. App. 435, 438, 232 S.E.2d 458, 459 (1977); see Granville Med. Ctr., 160 N.C. App. at 490–91, 586 S.E.2d at 796; In re Williams, 149 N.C. App. 951, 959, 563 S.E.2d 202, 206 (2002). This presumption arises even if the attached return receipt was signed by a person other than the addressee. See, e.g., N.C. Gen. Stat. § 1A-1, Rule 4(j2)(2); In re Williams, 149 N.C. App. at 959, 563 S.E.2d at 206; Fender v. Deaton, 130 N.C. App. 657, 662, 503 S.E.2d 707, 710 (1998); Lewis Clarke Assocs., 32 N.C. App. at 438, 232 S.E.2d at 459.

A defendant may rebut the presumption of valid service with "affidavits of more than one person showing unequivocally that proper service was not made upon the person of the defendant."

5

Grimsley v. Nelson, 342 N.C. 542, 545, 467 S.E.2d 92, 94 (1996). The affidavits must show that (1) the person who signed the return receipt was not the defendant's authorized agent and (2) the delivery failed to notify defendant of the lawsuit. See, e.g., id. at 545, 467 S.E.2d at 94; Dougherty Equip. Co., Inc. v. M.C. Precast Concrete, Inc., ___ N.C. App. ___, 711 S.E.2d 505, 508 (2011); Osman v. Reese, No. COA09-950, 2010 WL 1315595, at *3 (N.C. Ct. App. Apr. 6, 2010) (unpublished); Granville Med. Ctr., 160 N.C. App. at 491–92, 586 S.E.2d at 797–98; In re Williams, 149 N.C. App. at 959, 563 S.E.2d at 206; Fender, 130 N.C. App. at 663, 503 S.E.2d at 710–11; see also Morrison v. Holding, No. 7:11-CV-168-BO, 2012 WL 1132787, at *4–5 (E.D.N.C. Apr. 4, 2012) (unpublished).

On March 28, 2011, the USMS filed a return of service, indicating that it was unable to serve Harrell at the address that Adams provided. On August 1, 2011, the court directed the North Carolina Attorney General to provide an address for service on Harrell. On August 12, 2011, the Attorney General filed a response to the order with an address for service at the DOP Mail Service Center. On August 25, 2011, the clerk reissued summons, and on September 15, 2011, the USMS filed a return of service on Harrell, with a certified return receipt indicating that an individual at the DOP Mail Service Center received the summons and complaint.

Harrell challenges service on two grounds. First, Harrell notes that he did not sign the return receipt. Rather, the return receipt was stamped as received with "illegible writing, which may or may not be a signature." Harrell Aff. [D.E. 40-1] ¶ 3. Second, Harrell states that he has never authorized anyone at the DOP Mail Service Center to accept service of process on his behalf, and that he never received a copy of the summons and complaint. Id. ¶¶ 4, 6.

Felix Desantis states that, because of the volume of mail the DOP Mail Service Center receives "addressed to individuals who work at various facilities within the North Carolina

Department of Correction[,] .... employees of the Mail Service Center ... stamp these items ... to ensure timely delivery of documents directed to prison personnel and/or employees." Desantis Aff. [D.E. 40-3] ¶ 2. Desantis states that Harrell did not authorize Desantis to receive service of process on Harrell's behalf. Id. ¶ 4. Thomas Jones asserts that on October 5, 2011, he "received an unopened envelope that was forwarded to the Attorney General's Office," which contained the summons and complaint addressed to Harrell. Jones Aff. [D.E. 40-2] ¶¶ 3–4. Jones asserts that he is not Harrell's authorized agent for service of process. Id. ¶ 5.

The record includes a return receipt stamped by the DOP Mail Service Center, evidencing that an individual received a copy of the summons and complaint that the USMS sent by certified mail to the address that the Attorney General provided. See [D.E. 24]. Thus, under North Carolina law, a presumption of valid service arises. See, e.g., Sherrill Lumber Indus., Inc. v. Estes, No. COA02-993, 2003 WL 21649194, at *3 (N.C. Ct. App. July 15, 2003) (unpublished) (presumption established despite the illegible signature on the return receipt); In re Williams, 149 N.C. App. at 959, 563 S.E.2d at 206 (presumption established by the signature of an unidentified individual); Steffey v. Mazza Constr. Group, Inc., 113 N.C. App. 538, 540–41, 439 S.E.2d 241, 243 (1994) (presumption established despite the defendant's complaint that "some unidentified individual" from the mailroom signed the return receipt); see also Morrison, 2012 WL 1132787, at *4 (presumption established despite the mailroom's use of a stamped signature). However, the affidavits of Harrell and Desantis state that the DOP Mail Service Center was not Harrell's authorized agent, and the affidavits of Harrell and Jones show that Harrell never received notice of the summons and complaint. Accordingly, Harrell has rebutted the presumption of valid service. See, e.g., Grimsley, 342 N.C. at 545, 467 S.E.2d at 94–95; Morrison, 2012 WL 1132787, at *4; Osman, 2010 WL 1315595, at *3. Thus, due to invalid service, the court grants Harrell's motion to dismiss.

7

B.

Next, the court addresses Crenshaw's motion to dismiss for failure to state a claim. In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569–70 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Iqbal, 556 U.S. at 678–79. Similarly, a court need "not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

To state a claim under 42 U.S.C. § 1983 for inadequate medical care, an incarcerated prisoner must show deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. See, e.g., Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). To prove such a claim, Adams "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A prisoner is not entitled to choose his course of treatment. See

8

Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105–06.

Crenshaw argues that "[i]n a prison setting, the decision to discontinue a pain medication because of concerns of abuse of such medication does not amount to deliberate indifference to serious medical needs." Def. Crenshaw's Mem. Supp. Mot. Dismiss [D.E. 38] 6 (quotation omitted); see Atakpu v. Lawson, No. 1:05-CV-00524, 2008 WL 5233467, at *11 (S.D. Ohio Dec. 11, 2008) (unpublished) (collecting cases). However, Adams asserts that Crenshaw knew that her determination that he had misused his medication was incorrect, and that her accusation to the contrary "would cause [Adams] pain, suffering, and irreparable harm." Pl.'s Aff. ¶ 2. Thus, Adams has stated a claim against Crenshaw. Whether Adams can survive a motion for summary judgment is an issue for another day.

C.

Next, the court addresses Adams's latest motions for appointment of counsel. Cf. Jan. 26, 2011 Order [D.E. 11] 6 (denying motion for appointment of counsel). Adams continues to seek appointment of "outside counsel" because NCPLS has declined to represent him and he lacks access to "legal resources . . . ." Pl.'s 2d Mot. Appoint Counsel [D.E. 46] 1–2; Pl.'s 3d Mot. Appoint Counsel [D.E. 49] 1; see also Pl.'s Resp. Opp'n Def. Harrell's Mot. Dismiss [D.E. 48] 1, 6; Pl.'s Mot. Dispositive Issues [D.E. 55] 2. The court denies Adams's requests for the reasons stated in its prior order.

D.

Finally, the court addresses Adams's "motion on dispositive issues." Adams seeks discovery, including "evaluat[ion] by an outside medical doctor, who[] has no connection to the state," his medical records "from June 1[], 2008 to the present," "affidavits . . . of all parties involved," and "a

9

copy of the requirements of each defendant's duty as a medical care provider . . . ." Pl.'s Mot. Dispositive Issues 1–2.

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). "[D]iscovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials." Herbert v. Lando, 441 U.S. 153, 177 (1979); see Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant may not use discovery requests to annoy, embarrass, oppress, or cause an undue burden or expense to his opposing party. See Fed. R. Civ. P. 26(c)(1). Additionally, the court has "substantial discretion" to grant or deny motions to compel discovery. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995); see Erdmann v. Preferred Research Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988); LaRouche v. Nat'l Broad. Co., 780 F.2d 1134, 1139 (4th Cir. 1986).

To the extent that Adams seeks general information on medical providers' duties, a medical evaluation, or medical records from the period after he was transferred from WCI, the court concludes that such requests are not reasonably calculated to lead to the discovery of admissible evidence. However, to the extent that Adams seeks his medical records from between June 2008 and June 2010, the court grants his motion, and directs defendants to provide him with those records. In so ruling, the court declines to address Adams's contention that he cannot adequately respond to Jackson's motion for summary judgment. See Pl.'s Resp. Opp'n Def. Jackson's Mot. Summ. J. [D.E. 59] 3; see also Fed. R. Civ. P. 56(d); Crawford-El v. Britton, 523 U.S. 574, 599 n.20 (1998); Nader v. Blair, 549 F.3d 953, 961–62 (4th Cir. 2008); White v. BFI Waste Servs., LLC, 375 F.3d

288, 295 n.2 (4th Cir. 2004); Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244–45 (4th Cir. 2002). Adams may seek to file a supplemental response to Jackson's motion for summary judgment if he feels the additional medical records require him to do so.

II.

In sum, the court GRANTS Harrell's motion to dismiss [D.E. 40], and DISMISSES without prejudice Adams's claims against Harrell. The court DENIES Crenshaw's motions to dismiss [D.E. 33, 37], and DENIES Adams's motions for appointment of counsel [D.E. 46, 49]. The court GRANTS IN PART Adams's "motion on dispositive" issues [D.E. 55], and DIRECTS defendants to provide Adams with a copy of his medical records from WCI dating from between June 1, 2008 and June 30, 2010. Defendants shall provide the records on or before July 20, 2012. Jackson's motion for summary judgment [D.E. 56] remains pending. Crenshaw may file any other dispositive motion not later than July 31, 2012.

SO ORDERED. This **21** day of June 2012.

JAMES C. DEVER III
Chief United States District Judge